JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| In re FIRST AMERICAN CORPORATION SHAREHOLDER DERIVATIVE LITIGATION ) ) ) ) | Master File No. **SACV-06-1230-JVS(RNBx)** Consolidated with |
| This Document Relates To: ) ) | SACV 07-00134-JVS(ANx) |
| ALL ACTIONS. ) ) | FINAL JUDGMENT AND ORDER OF DISMISSAL |

On August 8, 2008, the parties filed a final Stipulation of Settlement ("Stipulation") with the Court. Docket No. 82. On September 30, 2008, this Court issued an order granting preliminary approval of the settlement. Docket No. 92 ("the September 30th Order"). On December 15, 2008, Lead Plaintiff Mark Young ("Young") filed a motion with the Court requesting final approval of the settlement, pursuant to Federal Rule of Civil Procedure 23.1.[1]

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 23.1 provides that "[a] derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23.1. It also requires that notice of the proposed settlement be given to shareholders. *Id.* "The rationale for requiring court approval is to insure that the settlement is fair to all and does not favor the named plaintiff-shareholders or their counsel." *Blatt v. Dean Witter Reynolds Intercapital, Inc.*, 732 F.2d 304, 307 (2d Cir. 1984). "Thus, the standard of review to be applied by the district court is whether the settlement 'is so unfair on its face as to preclude judicial approval.'" *Id.* (quoting *Glicken v. Bradford*, 35 F.R.D. 144, 151 (S.D.N.Y. 1964)).

"Before approving a class action settlement, the district court must reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties." *In re Imperial Corp. of Am.*, 92 F.3d 1503, 1506 n.5 (9th Cir. 1996) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1290 (9th Cir.), *cert. denied sub nom. Hoffer v. City of Seattle*, 506 U.S. 953, 113 S. Ct. 408, 121 L. Ed. 2d 333 (1992)). The Court "'must be satisfied that the compromise "fairly and adequately serves the interests of the corporation on whose behalf the derivative action was instituted."'" *In re Aol Time*

---

[1] All terms herein are to be defined and interpreted in accordance with the definitions provided in the Stipulation.

- 1 -

*Warner S'holder Derivative Litig.*, No. 02 Civ. 6302 (SWK), 2006 U.S. Dist. LEXIS 63260, at *6 (S.D.N.Y. Sept. 6, 2006) (quoting *Mathes v. Roberts*, 85 F.R.D. 710, 713 (S.D.N.Y. 1980)). "In applying this standard, courts commonly inquire 'whether the compromise is fair, reasonable and adequate,' with respect to both 'the negotiating process leading up to settlement as well as the settlement's substantive terms.'" *Id.* at *6-*7 (citations omitted).

Courts examine a variety of factors in evaluating the adequacy of a settlement, including "[t]he adequacy of the recovery provided the corporation by the settlement . . . considered in the light of the best possible recovery, . . . the risks of establishing liability and proving damages in the event the case is not settled, and . . . the cost of prolonging the litigation." *Shlensky v. Dorsey*, 574 F.2d 131, 147 (3d Cir. 1978); *see also Girsh v. Jepson*, 521 F.2d 153, 156-57 (3d Cir. 1975) (listing factors); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). Any shareholder objections should also be considered. *Aol Time Warner*, 2006 U.S. Dist. LEXIS 63260, at *10 (citing *In re Metropolitan Life Derivative Litig.*, 935 F. Supp. 286, 292 (S.D.N.Y. 1996)).

However, "[t]he principal factor to be considered in determining the fairness of a settlement concluding a shareholders' derivative action is the extent of the benefit to be derived from the proposed settlement by the corporation, the real party in interest." *Shlensky*, 574 F.2d at 147; *Unite Nat'l Ret. Fund v. Watts*, No. 04-CV-3603 (DMC), 2005 U.S. Dist. LEXIS 26246, at *7-*8 (D.N.J. Oct. 28, 2005) (citing *Shlensky*).

## II. DISCUSSION

Young's First Amended Complaint ("FAC") alleges that the Individual Defendants[2] participated in a stock options backdating scheme that allegedly benefited

---

[2] The Individual Defendants include: Donald P. Kennedy, Parker S. Kennedy, Craig I. DeRoy, Dennis J. Gilmore, Gary L. Kermott, Curt A. Caspersen, Mark R. Arnesen, Anand K. Nallathambi, Max O. Valdes, Barry M. Sando, Kenneth D.

- 2 -

them at The First American Corporation's ("First American") expense and that this scheme resulted in First American recording a "cash and non-cash stock based compensation charge of approximately $35.7 million." FAC, ¶¶23, 30-54. The FAC also alleges that certain of the Individual Defendants engaged in insider trading in violation of state law. *Id.*, ¶¶310-312. The plaintiffs allege 12 causes of action for: (1) violations of §14(a) of the Securities Exchange Act of 1934; (2) accounting; (3) breach of fiduciary duty; (4) abuse of control; (5) gross mismanagement; (6) constructive fraud; (7) corporate waste; (8) unjust enrichment; (9) rescission; (10) breach of contract; (11) violations of California Corporations Code §§25402 and 25502.5; and (12) breach of fiduciary duties for insider selling and misappropriation of information. *Id.*, ¶¶263-318.

**A.     Terms of the Settlement**

Pursuant to the parties' Stipulation, Young and the class members release all claims related to the allegations regarding, *inter alia*, mispricing of stock options included in the FAC. Stip., ¶¶1.14, 4.1-4.2. In exchange, First American and the Individual Defendants agree to implement certain corporate governance measures including specified internal controls and procedures for five years. *Id.*, ¶¶1.6-1.7, 2.1, 2.3.

The Stipulation includes information regarding certain repayments of unearned benefits received by certain executive officers and members of the board of directors that have been made to First American. *Id.*, ¶2.2(c). Relevant officers and directors have repaid $755,857 to First American. September 26, 2008 Palmer Decl., ¶20.

---

DeGiorgio, John M. Hollenbeck, George L. Argyros, Gary J. Beban, J. David Chatham, William G. Davis, James L. Doti, Lewis W. Douglas, Jr., Frank E. O'Bryan, Roslyn B. Payne, D. Van Skilling, Herbert B. Tasker, Virginia M. Ueberroth, and Mary Lee Widener (collectively, the "Individual Defendants").

1   The Stipulation also provides that First American will pay $2.05 million in attorneys' fees to Young's counsel. Stip., ¶5.1. Thus, "the only cash involved in th[is] settlement would go to counsel." *See In re Zoran Corp. Derivative Litig.*, No. C 06-05503 WHA, 2008 U.S. Dist. LEXIS 48246, at *17 (N.D. Cal. Apr. 7, 2008).

### B. Approval Factors

Young argues that the Stipulation provides significant benefits to First American while eliminating the expense, risk and delay inherent in such complex litigations, including the risk of no recovery. Mot. at 12-16. The Court notes, however, that the Stipulation does not provide any monetary recovery to First American to compensate it for the charge in the amount of $35.7 million that it took because of the mispriced options. Rather, the Stipulation provides that First American pay Young's counsel $2.05 million while contemplating beneficial corporate governance measures over the next five years.

The mere fact that First American receives no monetary benefit does not preclude approval of the settlement, however. Non-pecuniary benefits to the corporation have been deemed adequate consideration for the settlement of derivative suits. *See Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1311 (3d Cir. 1993) (collecting cases); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 395 & n.22, 90 S. Ct. 616, 24 L. Ed. 2d 593 (1970) (recognizing that "a corporation may receive a 'substantial benefit' from a derivative suit . . . regardless of whether the benefit is pecuniary in nature"); *Cohn v. Nelson*, 375 F. Supp. 2d 844, 853 (E.D. Mo. 2005). Non-monetary benefits can be particularly valuable "when the relief is intended to prevent future harm." *Unite Nat'l Ret. Fund*, 2005 U.S. Dist. LEXIS 26246, at *8-*9.

Here, the corporate governance measures set forth in the Stipulation include:

1)   the requirement that the Chairman of the Board and Chief Executive Officer for the financial services and information solutions groups be held by separate individuals;

- 4 -

1    2)   the requirement that the Chairman of the Board consider input from directors as to the preparation of meeting agendas;

3)   the requirement that the Chairman of the Board consult with First American's corporate and securities laws compliance officers on a quarterly basis;

4)   the requirement that the independent directors of the Board elect a Lead Director who shall (i) liase between the independent directors and the Chairman and (ii) provide advice to the Chairman regarding the schedule and agenda for Board meetings, retention of consultants for the Board, and ensuring that the Corporate Governance and Nominating Committee oversees compliance with First American's corporate governance policies and the process to recommend revisions to those policies, and that the Compensation Committee oversees compliance with First American's polices regarding executive and incentive-based compensation;

5)   the requirement that the CEO and CFO use sub-certifications under Sarbanes-Oxley.

Stip., ¶2.2(a)-(f).

The Stipulation also specifies certain policies and procedures to be adopted with regard to compensation:

1)   First American's charter shall be amended to require "continued shareholder approval of all stock option plans";

2)   First American shall review and regularly update, if necessary, its written policy on incentive compensation, last amended May 28, 2008; and

3)   at least every two years, the Compensation Committee shall consult independent auditors to review the written incentive compensation policy, the Audit Committee shall consult with independent auditors to conduct a review of internal controls, and First American shall review, revise and update the charters for all of the committees of the Board.

Stip., ¶2.2(g).

1       Young has provided evidence that these reforms have provided substantial shareholder value in terms of First American's market capitalization. On the day prior to announcement of the settlement on August 8, 2008, First American stock was trading at $23.07. *See* Declaration of Richard A. Bennett, ¶14 ("Bennett Decl."), attached as Ex. A to Plaintiffs' Supplemental Brief in Support of Motion for Preliminary Approval of Settlement filed September 26, 2008. When Young's corporate governance expert gave his declaration the stock was trading at a 35% increase, representing added market capitalization of about $725 million. Bennett offers empirical evidence of the relation between the adoption of good corporate governance and market capitalization (Plaintiffs' Supplemental Brief, Ex. B) and of investor willingness to pay a premium for good governance.[3] Bennett Decl., ¶¶15-23. These are the types of benefits to which other courts have looked in assessing approval of settlements of derivative actions. *See Aol Time Warner*, 2006 U.S. Dist. LEXIS 63260, at *12; *Unite Nat'l Ret. Fund*, 2005 U.S. Dist. LEXIS 26246, at *9; *Granada Invs., Inc. v. DWG Corp.*, 823 F. Supp. 448, 452 (N.D. Ohio 1993) (noting that the company's stock price increased 353.8% "[s]ince the execution of the definitive agreements to effectuate a change of control" that formed the basis of the settlement).

      In addition, Young has offered the expert opinions of Bennett and Monks that the corporate governance reforms provide a substantial benefit. Mot. at 1-2; *see*

---

[3]     Even after the September 29, 2008 market rout, First American still trades at a premium to its price prior to August 8. As of the close of the market on December 17, 2008, First American stock was trading at $28.16. *See* http://moneycentral.msn.com/investoricharts/chart.aspx?PT=4&showchartbt=Redraw+chart&compsyms=&CA=1&D4=1&DD=1&D5=0&DCS=2&MA0=0&MA1=0&D7=&D6=&symbol=FAF&nocookie=1&SZ=0. In addition, the market price of First American is still favorable today in comparison to the Dow Jones Industrial Average. *Id.*

*generally* Bennett Decl.; Declaration of Robert A.G. Monks ("Monks Decl."), attached as Ex. A to the Declaration of Darren J. Robbins in Support of Motion for Final Approval of Derivative Settlement.

Bennett is the President and Chief Executive Officer and founder of The Corporate Library, LLC ("TCL") and a former consultant with Lens Governance Advisors, PA ("LGA"), "organizations that specialize in the field of analyzing and improving corporate governance of U.S. public companies." Bennett Decl., ¶1. Bennett declares that the governance reforms in the Stipulation represent "value-adding principles and best practices" that are a "substantial improvement" over First American's pre-existing governance. *See id.*, ¶26. In addition, Monks, an attorney and founder of LGA, declares that:

> The corporate governance reforms achieved in the settlement are designed to increase the accountability of First American's board of directors to the company's shareholders, improve the board's ability to fulfill its monitoring role and strengthen the company's internal controls, all of which will, in my opinion, help prevent a recurrence of the conduct that led to the initiation of the First American Derivative Action and enhance the value of First American's shares in the marketplace.

Monks Decl., ¶25.

The Court had initial concerns whether these corporate reforms had their roots in the settlement. The Court is satisfied with the chronology which Young sets forth in his supplemental showing. Plaintiffs' Supplemental Brief at 4-9. While some changes may be linked to the actions of First American's special committee of the board of directors, the Court believes that initiation of the present litigation and subsequent settlement discussions produced substantial tangible and intangible benefits for shareholders.

Young argues that the settlement is appropriate in light of the challenges he would face in continuing litigation, including opposing the Individual Defendants' motion challenging his pleading on, *inter alia*, grounds of demand futility. Mot. at 13-14. While the Court is not necessarily as negative as the parties on Young's likelihood of success, the significance of this factor is reduced in light of the positive benefits of settlement which Young has established with his supplemental showing. Moreover, the Court finds that the parties' assessment of such key issues as proof of actionable backdating, demand futility, the effect of the business judgment rule, and the disparate positions (and disparate legal duties) of the officers and directors reflects thoughtful consideration based on a clear understanding of the law. *Id*. at 13-16; Plaintiffs' Supplemental Brief at 11-17; Individual Defendants' Response at 11-15. Indeed, those views are entitled to weight where they are advanced by experienced counsel on both sides of the table. *Fisher Brothers v. Cambridge-Lee Industries, Inc.*, 630 F. Supp. 482, 488 (E.D. Pa. 1985); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 617 (N.D. Cal. 1979).

The Court finds that this case distinguishes itself from *Zoran*, a case from the Northern District of California, in several significant respects. *See Zoran*, 2008 U.S. Dist. LEXIS 48246, at *17. Here, the officers and directors have disgorged through repayment and/or repricing any benefit of tainted options, albeit not through the settlement process. The Court has sustained one motion to dismiss, and another looms if the Court declines to grant approval. Moreover, the value of the settlement has now been affirmatively shown.

Furthermore, the Court finds it significant that Lead Counsel has received no objections to date. *See* Mot. at 19. The Notice of Proposed Settlement was filed with the SEC on a Form 8-K on October 14, 2008 and a Publication Notice was published on October 17, 2008 in *Investor's Business Daily*. *Id*. The Notice of Proposed Settlement and Stipulation are posted on First American's website. *Id*.; October 21,

2008 Palmer Decl. These notices advised shareholders that objections had to be filed with the Court no later than December 7, 2008.

In *In re SmithKline Beckman Corp. Sec. Litig.*, the court found that "the reaction of the class to the proffered settlement is perhaps the most significant factor to be weighed in considering its adequacy, particularly when the relief is expressed in monetary terms." 751 F. Supp. 525, 530 (E.D. Pa. 1990). Similarly, the court in *Rome v. Archer* found it noteworthy that the "settlement agreement was ratified by a very large majority of the shareholders and was opposed only by [some] objectants." 41 Del. Ch. 404, 419 (Del. 1964) (approving settlement). Although the bulk of the relief in the present case is not monetary, the Court nevertheless finds that it is a significant factor that there are no objections to the settlement.

The caution in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998), is worth repeating in granting approval. "Settlement is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter, or snazzier, but whether it is fair, adequate, and free from collusion." *Id.* Even if it is not cash, a $35 million charge for mispriced options is value that First American shareholders lost, whether by actionable conduct or otherwise. Nevertheless, the Court finds that the proposed settlement is within a range of reasonableness and fairness which merits final approval.

### C. Attorneys' Fees

The Stipulation provides that First American will pay $2.05 million in attorneys' fees to Young's counsel. Stip., ¶5.1.

Young argues that the $2.05 million is appropriate because it is at the low end of the range of fees awarded in other similar derivative cases. Mot. at 22. Young points to several similar cases in which the attorneys were awarded fees over and above the amount requested here. *Id.* at 23. For example, the court in *Unite Nat'l Ret. Fund* approved $9.2 million in attorneys' fees in a derivative action based on "the great benefit conferred upon Shell as a result of the new corporate governance

principles provided for in the settlement agreement." 2005 U.S. Dist. LEXIS 26246, at *18. The court also noted that "it is clear that counsel put forth great effort in its investigation and devoted significant resources and time to achieving such a favorable settlement." *Id.*

Similarly, in *Cohn*, the court awarded $2.25 million in attorneys' fees and expenses in a derivative action brought against corporate directors. 375 F. Supp. 2d at 860. The court reasoned that substantial benefits were achieved in the litigation, counsel expended significant time and effort, and the representation was contingent. *Id.* The court also pointed out that "the fees awarded in similar lawsuits achiev[ed] similar results." *Id.*

As discussed above, Young has provided the Court with evidence that the corporate governance reforms provide a substantial benefit to First American. *See generally* Bennett Decl.; Monks Decl. The Court has also noted above that it is satisfied that initiation of the present litigation and subsequent settlement discussions produced substantial tangible and intangible benefits for shareholders. Therefore, this Court agrees that the caselaw supports the amount of the award in the present action.[4]

As part of the motion for final approval, counsel has submitted a lodestar calculation against which the Court can measure the reasonableness of the requested fees. *See* Declaration of Darren J. Robbins in Support of Plaintiffs' Motion for

---

[4] Moreover, this Court notes that "[i]n the absence of any evidence of collusion or detriment to the class, the [c]ourt should give substantial weight to a negotiated fee amount, assuming that it represents the parties' 'best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees.'" This weight is particularly appropriate when, as here, no objection has been raised to the fee award and the amount of fees . . . ." *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001) (citations and footnote omitted). There have been no objections in the present case to the fee award and the Court has received no evidence of collusion.

- 10 -

Attorneys' Fees ("Robbins Fee Decl."). In the Ninth Circuit, the *Hanlon* lodestar calculation guides the determination of whether a fee award is reasonable:

> The lodestar calculation begins with the multiplication of the number of hours reasonably expended by a reasonable hourly rate. The hours expended and the rate should be supported by adequate documentation and other evidence; thus, attorneys working on cases where a lodestar may be employed should keep records and time sheets documenting their work and time spent. The resulting figure may be adjusted upward or downward to account for several factors including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.

*Hanlon*, 150 F.3d at 1029 (citations omitted).

Young's counsel declares that counsel and their para-professionals have spent a total of 1,783 hours in the prosecution of this case. Robbins Fee Decl., ¶10. Young's counsel has submitted a summary of the hours and rates for the attorneys and para-professionals working on the case. The Court has reviewed the number hours and the rates and finds that they are reasonable. The multiplier in this case is 2.33. As discussed above, the Court finds that the total amount agreed upon in the settlement is reasonable given the benefits conferred upon First American. The Court also notes that "multipliers can range from 2 to 4 or even higher." *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 255 (2001). Therefore, the Court finds that the multiplier of 2.33 in this case is reasonable and approves the $2.05 million in attorneys' fees agreed upon in the settlement.

### D. Incentive Award for Lead Plaintiff Mark Young

Finally, Young requests approval for an award of $1,500.00 for Lead Plaintiff Mark Young. Mot. at 28. In *In re Mego Fin. Corp. Sec. Litig.*, the court affirmed the trial court's award of an incentive award to the class representatives. 213 F.3d 454, 463 (9th Cir. 2000). Mark Young has provided the Court with a

declaration explaining his role in this litigation. *See generally* Mark Young Decl. The Court has reviewed this declaration and finds that Mark Young has spent significant effort and time in connection with this action.

Therefore, the Court approves the modest incentive award of $1,500.00 for Mark Young.

### III. CONCLUSION

Accordingly, the Court, having jurisdiction over the subject matter of this action and over all parties to the Settlement, and having considered all papers filed and proceedings held herein and otherwise being fully informed and good cause appearing therefore, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1. Pursuant to Rule 23.1 of the Federal Rules of Civil Procedure, the Court approves the Settlement set forth in the Stipulation and finds that the Settlement is, in all respects, fair, reasonable and adequate to, and in the best interests of, First American and its shareholders. The Court further finds the Settlement set forth in the Stipulation is the result of arm's-length negotiations between experienced counsel representing the interests of the Plaintiffs on behalf of First American, the Individual Defendants and First American. Accordingly, the Settlement embodied in the Stipulation is hereby approved in all respects and shall be consummated in accordance with its terms and provisions. The Settling Parties are hereby directed to perform the terms of the Stipulation.

2. Upon the Effective Date, Plaintiffs, First American, and each of the Current First American Shareholders shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished and discharged all Released Claims against the Released Parties.

3. Plaintiffs, First American and each of the Current First American Shareholders, are hereby forever restrained and enjoined from prosecuting, pursuing, or litigating any of the Released Claims against any of the Released Parties in this or any other forum.

1    4.    Upon the Effective Date hereof, each of the Released Parties shall be deemed to have, and by operation of this Final Judgment shall have, fully, finally, and forever released, relinquished and discharged First American, Plaintiffs and Plaintiffs' Counsel from all claims (including Unknown Claims) arising out of, relating to, or in connection with, the institution, prosecution, assertion, settlement or resolution of the Action or the Released Claims except for obligations imposed by the Stipulation in connection with the Settlement of the Action.

5.    The posting of, filing of, and publication of the summary notice as provided for in the September 30, 2008 Order collectively served as the best notice practicable under the circumstances. The notice provided the best notice practicable under the circumstances of those proceedings and of the matters set forth therein, including the proposed Settlement set forth in the Stipulation, to all Persons entitled to such notice, and the notice fully satisfied the requirements of Federal Rule of Civil Procedure 23.1, the requirements of due process, and any other applicable law.

6.    Neither the Stipulation nor the Settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (a) is or may be deemed to be or may be offered, attempted to be offered or used in any way by the Settling Parties as a presumption, a concession or an admission of, or evidence of, any fault, wrongdoing or liability of the Defendants or the validity of any Released Claims; or (b) is intended by the Settling Parties to be offered or received as evidence used by any other person in any other actions or proceedings, whether civil, criminal or administrative. The Released Parties may file the Stipulation and/or this Final Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, full faith and credit, release, good faith settlement, judgment bar or reduction or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

7. Without affecting the finality of this Final Judgment in any way, this Court hereby retains continuing jurisdiction over: (a) implementation of this Settlement; (b) all parties hereto for the purpose of construing, enforcing and administering the Stipulation; and (c) any other matter related or ancillary thereto.

8. The Court finds that during the course of the Action, the Settling Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.

9. In the event that the Settlement does not become effective in accordance with the terms of the Stipulation or the Effective Date does not occur, then this Final Judgment shall be rendered null and void to the extent provided by and in accordance with the Stipulation and shall be vacated and, in such event, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Stipulation.

The Court is satisfied that the Settlement "fairly and adequately serves the interests of the corporation on whose behalf the derivative action was instituted," and accordingly grants final approval of this Settlement. *See Mathes*, 85 F.R.D. at 713. The Court also approves the award of $2.05 million in attorneys' fees and the incentive award of $1,500.00 for Mark Young.

IT IS SO ORDERED.

DATED: January 08, 2009

_____
THE HONORABLE JAMES V. SELNA
UNITED STATES DISTRICT JUDGE

- 14 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 29, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on December 29, 2008.

     s/ KATHLEEN A. HERKENHOFF
    KATHLEEN A. HERKENHOFF

COUGHLIN STOIA GELLER
 RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  KathyH@csgrr.com